In The
# United States Court of Appeals
### For The Third Circuit

**PACIRA BIOSCIENCES, INC.,**

*Appellant,*

**v.**

**AMERICAN SOCIETY OF ANESTHESIOLOGISTS, INC.;
EVAN D. KHARASCH; NASIR HUSSAIN; RICHARD BRULL;
BRENDAN SHEEHY; MICHAEL K. ESSANDOH;
DAVID L. STAHL; TRISTAN E. WEAVER;
FARAJ W. ABDALLAH; BRIAN M. ILFELD;
JAMES C. EISENACH; RODNEY A. GABRIEL;
MARY ELLEN MCCANN,**

*Appellees.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
NO. 2:21-cv-09264**

───────────

**BRIEF OF *AMICUS CURIAE*
THE AMERICAN SOCIETY FOR CLINICAL
PHARMACOLOGY & THERAPEUTICS
IN SUPPORT OF APPELLEES AND AFFIRMANCE**

───────────

Steven E. Tiller
Aaron A. Nichols
WHITEFORD, TAYLOR & PRESTON LLP
Seven Saint Paul Street, Suite 1500
Baltimore, Maryland 21202
(410) 347-9425

*Counsel for Amicus Curiae
The American Society for Clinical Pharmacology & Therapeutics*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Third Circuit Rule 26.1, *Amicus Curiae*, the American Society for Clinical Pharmacology & Therapeutics ("ASCPT"), certifies that it has no parent company and no publicly held corporation owns more than 10% of ASCPT.

**TABLE OF CONTENTS**

**Page**

CORPORATE DISCLOSURE STATEMENT .........................................................i

TABLE OF CONTENTS..........................................................................ii

TABLE OF AUTHORITIES ..................................................................iii

I.     FRAP 29(a)(4) STATEMENT OF IDENTIFICATION ................................1

II.    INTRODUCTION AND SUMMARY OF ARGUMENT.............................2

III.   FACTUAL BACKGROUND........................................................4

IV.   ARGUMENT...........................................................................5

       a.     ASCPT Has a Significant Interest in the Result of this Appeal............5

       b.     The Scientific Community Must <u>NOT</u> Fear Reprisal for Engaging in the Peer Review Process and Scholarly Debate ..............6

       c.     The Lower Court's Opinion Does not Create a Categorical Exception to Trade Libel Causes of Action .......................................11

V.     CONCLUSION.........................................................................13

COMBINED CERTIFICATIONS

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Containment Techs. Grp., Inc. v. Am. Soc. of Health Sys. Pharmacists*,
    2009 WL 838549 (S.D. Ind. Mar. 26, 2009) ................................................10

*Hoey v. Insmed Inc.*,
    2018 WL 902266 (D.N.J. Feb. 15, 2018) .......................................................8

*ONY, Inc. v. Cornerstone Therapeutics, Inc.*,
    2012 WL 1835671 (W.D.N.Y. May 18, 2012), *aff'd*,
    720 F.3d 490 (2d Cir. 2013) ...............................................................10, 12

*Pacira Biosciences, Inc. v. Am. Soc'y of Anesthesiologists, Inc.*,
    583 F. Supp. 3d 654 (D.N.J. 2022) .......................................................1, 8, 12

*Saad v. Am. Diabetes Ass'n*,
    123 F. Supp. 3d 175 (D. Mass. 2015) ..........................................................11

*Underwager v. Salter*,
    22 F.3d 730 (7th Cir. 1994) .......................................................................11

**RULE**

Fed. R. App. P. 29(a)(4) ...................................................................................1

**OTHER AUTHORITIES**

ICMJE, https://www.icmje.org/icmje-recommendations.pdf
(last visited Sept. 28, 2022) ............................................................................9

Peer Review in Scientific Publications: Benefits, Critiques, & A Survival
Guide (Oct. 24, 2014), J. Kelly, eJIFCC (https://www.ncbi.nlm.nih.gov/pmc/
articles/PMC4975196/pdf/ejifcc-25-227.pdf (last visited Sept. 28, 2022) ...............9

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Containment Techs. Grp., Inc. v. Am. Soc. of Health Sys. Pharmacists*,
    2009 WL 838549 (S.D. Ind. Mar. 26, 2009) ................................................10

*Hoey v. Insmed Inc.*,
    2018 WL 902266 (D.N.J. Feb. 15, 2018) ........................................................8

*ONY, Inc. v. Cornerstone Therapeutics, Inc.*,
    2012 WL 1835671 (W.D.N.Y. May 18, 2012), *aff'd*,
    720 F.3d 490 (2d Cir. 2013) ................................................................10, 12

*Pacira Biosciences, Inc. v. Am. Soc'y of Anesthesiologists, Inc.*,
    583 F. Supp. 3d 654 (D.N.J. 2022).......................................................1, 8, 12

*Saad v. Am. Diabetes Ass'n*,
    123 F. Supp. 3d 175 (D. Mass. 2015)............................................................11

*Underwager v. Salter*,
    22 F.3d 730 (7th Cir. 1994) ........................................................................11

## RULE

Fed. R. App. P. 29(a)(4)..............................................................................................1

## OTHER AUTHORITIES

ICMJE, https://www.icmje.org/icmje-recommendations.pdf
(last visited Sept. 28, 2022)........................................................................................9

Peer Review in Scientific Publications: Benefits, Critiques, & A Survival
Guide (Oct. 24, 2014), J. Kelly, eJIFCC (https://www.ncbi.nlm.nih.gov/pmc/
articles/PMC4975196/pdf/ejifcc-25-227.pdf (last visited Sept. 28, 2022)................9

## I.    FRAP 29(a)(4) STATEMENT OF IDENTIFICATION

*Amicus Curiae*, the American Society for Clinical Pharmacology & Therapeutics ("ASCPT"), provides the following disclosures pursuant to Federal Rule of Appellate Procedure ("FRAP") Rule 29(a)(4).

**Identity & Interest in the Case.**  *Amicus Curiae* is the American Society for Clinical Pharmacology & Therapeutics.   ASCPT files this brief in support of upholding the decision reached by the United States District Court for the District of New Jersey in the underlying action (the "Lower Court") captioned as *Pacira Biosciences, Inc. v. Am. Soc'y of Anesthesiologists, Inc.*, 583 F. Supp. 3d 654 (D.N.J. 2022) (the "Opinion")) and in further support to the arguments raised by the American Society of Anesthesiologists, Inc. (the "ASA") and the twelve individual appellees (collectively, the "Appellees") in this proceeding.

As discussed herein, ASCPT has a significant interest in the outcome of this Appeal.   ASCPT is a non-profit society that provides pharmacology professionals with, among other membership-benefits, educational resources to further develop and improve the fields of pharmacology and therapeutics.[1]   ASCPT focuses on improving the understanding and use of existing drug therapies and developing safer and more effective treatments for future use.   As part of its mission, ASCPT publishes three journals–all of which include peer-reviewed studies and research–

---

[1] ASCPT's website can be found at: https://www.ascpt.org/.

similar to the publications published by ASA and challenged by Appellant. This Court's affirmance of the Lower Court's decision will safeguard the peer-review process and scientific debate across all sciences, including specifically, the industries on which ASCPT and its members focus. Accordingly, ASCPT files this brief in further support of upholding the Lower Court's decision.

**Source of Authority**. ASCPT files this brief with the consent of all parties.

**Participation and Contribution**. No party other than ASCPT and its counsel has participated in the drafting of this brief or contributed money directly intended to fund the preparation or submission of this brief. No other person or entity other than ASCPT has contributed money intended to fund the preparation or submission of this brief.

## II.    INTRODUCTION AND SUMMARY OF ARGUMENT

ASCPT files this brief to protect the freedom of speech rights owned by the scientific community, including specifically, the pharmacology[2] and therapeutics[3]

---

[2]    Pharmacology is a branch of medicine, biology and pharmaceutical sciences concerned with drug and medication action. More specifically, it is the study of the interactions that occur between a living organism and chemicals that affect normal or abnormal biochemical function. The field encompasses drug composition, design, properties, functions, sources, and synthesis.

[3]    Therapeutics is the treatment and care of patients for the purpose of both preventing and combating disease and alleviating pain or injury. In a broad sense, therapeutics means serving and caring for patients in a comprehensive manner, preventing disease, and managing specific ailments and injuries.

community, and to prevent the future threat of litigation simply because a published scientific opinion or conclusion may be inconsistent with a drug manufacturer's marketing materials. Appellant's unfounded lawsuit has caught the attention of the medical and science communities, especially the ASCPT and its members, which heavily rely on journals to disseminate and debate cutting edge scientific developments. While specific to Appellant's product, the scope of the underlying lawsuit, if allowed to proceed past the pleadings stage, would have a profound impact on *all* scientific communities that rely on the peer-review process. This would be particularly true for the pharmacology and therapeutics professionals who discover and develop medicines and make challenging life-saving and life-altering decisions every day.

Appellant's lawsuit tacitly advances its own interests over two of the most powerful tools in the development of modern medicine and science: the peer review process and scientific debate. Appellant essentially seeks to create a cause of action to challenge unwanted scientific conclusions through the courts, as opposed to where such protests would be most impactful—in the scientific and medical communities. Appellant—and others like it—must not be allowed to curtail the opinions of the medical community to fit its desired narrative.

While the law—as fully addressed in the Appellee's brief—strongly favors the conclusions reached by the Lower Court, public policy and common-sense also

confirm the propriety of the Lower Court's Opinion. Indeed, a scientific community that is stymied by the threat of retaliation is sure to fail. Like many courts before it, this Court has the opportunity to safeguard and affirm the strength of one's rights to engage in meaningful scientific debate that provides an invaluable benefit to the community. As the Lower Court aptly put it: "The peer-review process—not a courtroom—[ ] provides the best mechanism for resolving scientific uncertainties" such as those alleged by Appellant. Op. at p. 5. ASCPT appreciates this Court's consideration of this brief and respectfully requests that it uphold the decision of the Lower Court.

## III.   FACTUAL BACKGROUND

ASA is a "professional medical association centered on the practice of anesthesiology[.]" Compl. at ¶ 5. It is the publisher of the medical journal *Anesthesiology*; the most cited medical journal on anesthesiology. Compl. at ¶ 82. Therefore, according to Appellant, "statements made by the ASA in *Anesthesiology* carry significant weight in the medical and pharmaceutical industry." *Id*. Appellant's Complaint claims that it was damaged as a result of three publications (the "ASA Publications") published by ASA in its February 2021 issue of *Anesthesiology* regarding the Appellant's drug EXPAREL.

Appellant, in the Lower Court, challenged the ASA Articles primarily on three grounds; (1) "the articles rely heavily on pain studies that make no attempt to account

for the fact that patients receive other medication beyond the test drugs" (Compl. at ¶ 37); (2) the articles make "blanket, unqualified conclusions that EXPAREL is not effective" (Compl. at ¶ 38); and (3) the articles' alleged decision "to discredit industry-sponsored trials as supposedly biased simply because of their funding source" (Compl. at ¶ 39). From these core allegations, Appellant alleges damages caused by Appellee's alleged bias against EXPAREL and intentionally misleading conclusions. *See generally,* Compl.

## IV. ARGUMENT

### a. *ASCPT Has a Significant Interest in the Result of this Appeal*

On May 1, 1900, a group of twenty physicians met to form the American Therapeutic Society ("ATS") to promote the advancement of rational therapeutics through "the application of any method or agency which might ameliorate, cure, or prevent disease." In 1970, ATS merged with the American Society of Clinical Pharmacology & Chemotherapy to create ASCPT. ASCPT's mission is to advance clinical pharmacology, translational science, and therapeutics development for the benefit of patients and society. ASCPT is devoted to stimulating collaborations between its members, which include academia, physicians, clinicians, researchers, drug developers, pharmaceutical companies, regulators, and other industry professionals, for the discovery, development and regulation of safe and effective therapies.

As part of its mission, ASCPT publishes three peer-reviewed scientific research journals, spanning translational science, clinical pharmacology, and pharmacometrics and systems pharmacology. These journals include Clinical Pharmacology & Therapeutics, CPT: Pharmacometrics & Systems Pharmacology, and Clinical and Translational Science. Much like the ASA's journals, each of the journals published by the ASCPT are extremely well-regarded, providing cutting-edge scientific content written and anonymously peer-reviewed by some of the foremost experts in their fields. These publications, like other leading and well-respected peer-reviewed journals, allow for the distribution and exchange of the latest scientific studies, research, and data critical to the development of safe and effective therapies and treatments.

ASA and ASCPT are like entities whose scope and membership overlap to some extent. Like ASCPT, part of ASA's mission is to develop and improve drugs prescribed and used by anesthesiologists and other physicians. Accordingly, certain members of ASA are also members of ASCPT while both organization's respective journals may publish articles regarding the same drugs and treatments.

### b. The Scientific Community Must _NOT_ Fear Reprisal for Engaging in the Peer Review Process and Scholarly Debate

Appellant's position in this appeal is that it should be allowed to pursue claims against a scientific publication and its editors, authors, and contributors because of the conclusions reached. Appellant, however, does not allege affirmative

misrepresentations, fraud, or actual deceit. Instead, Appellant's Complaint raises objections only to the methods employed, evidence relied on, and conclusions reached by the defendant authors—all issues accurately disclosed in each of the publications at issue. Appellant contends that this should be the standard for a viable trade libel claim or else the cause of action, in the scientific journal realm, would be rendered unattainable.

The opposite, however, is true. Should claims, such as the ones alleged by Appellant, serve as the standard for a viable trade libel action in the context of scientific speech, the chilling effect on public scientific debate would be devastating, injuring not only the scientific community, but the public at large by limiting the exchange of valuable information and data necessary for, among other things, the development of new drug therapies as the allegations offered by Appellant *can be* manufactured to some degree in *almost every* scientific publication. For example, a potential plaintiff can often find *some* attenuated bias of an author or editor, *some* allegedly "better" methodology that could have been used, *some* piece of purported evidence that was not considered or was given too little (or too much) weight, or *some* asserted flaw in the analysis. Such a standard would allow companies like Pacira to silence its critics with the threat of litigation. What's worse, such a result would allow claims made by drug manufacturers to go unchecked by the medical community—the same community relied on by Appellant to write prescriptions for

its medication. *See Hoey v. Insmed Inc.*, 2018 WL 902266, at *10 (D.N.J. Feb. 15, 2018) ("Plaintiff's allegations attempt to establish the falsity of Insmed's statements with regard to the results of the Phase 2 Trial, by attacking its underlying methodology…[C]ourts throughout the country have consistently rejected this approach.")

Simply put, when it comes to medicine and drug development, medical professionals and scientists must not be forced to solely rely on the marketing materials and affirmations proffered by drug manufactures. As the Lower Court noted, "[t]o hold otherwise would chill robust and open debate about the efficacy of drugs within the medical community—particularly here, where [Appellant] seeks retraction of the articles in question, removal of related materials from the Internet, and compensatory and punitive damages against the scientists who published their academic opinions." *Pacira*, 583 F. Supp. 3d at 659.

ASCPT's interest align with the Lower Court's Opinion in this regard. The pharmacology community heavily relies on drug trials and research conducted by universities, independent labs, and industry professionals to assist in the design and development of new medicine and treatments. In short, the peer-review process is critical to the continued evolution of medicine. As one journal aptly described the process:

Peer review has become the foundation of the scholarly publication system because it effectively subjects an author's work to the scrutiny of other experts in the field. Thus, it encourages authors to strive to produce high quality research that will advance the field. Peer review also supports and maintains integrity and authenticity in the advancement of science. A scientific hypothesis or statement is generally not accepted by the academic community unless it has been published in a peer-reviewed journal. The Institute for Scientific Information (*ISI*) only considers journals that are peer-reviewed as candidates to receive Impact Factors. Peer review is a well-established process which has been a formal part of scientific communication for over 300 years.[4]

The peer review process itself protects the integrity of the process. All peer-reviewed publications, including those published in both ASCPT and ASA's journals, must adhere to the standards set by the International Committee of Medical Journal Editors ("ICMJE").[5] These standards speak directly to the concerns proffered throughout Appellant's Brief and assist in preventing the dissemination of false or non-conforming information, research and conclusions.

Appellant's lawsuit and this appeal attempt to substantially chill this peer review process by injecting the fear of reprisal into every published scientific study and trial. Medical professionals making statements in the context of academia would

---

[4]    *See* Peer Review in Scientific Publications: Benefits, Critiques, & A Survival Guide (Oct. 24, 2014), J. Kelly, eJIFCC (https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4975196/pdf/ejifcc-25-227.pdf (last visited Sept. 28, 2022)).

[5]    *See* ICMJE, https://www.icmje.org/icmje-recommendations.pdf (last visited Sept. 28, 2022).

be subject to litigation whenever a conclusion is reached that contradicts the marketing materials of a drug manufacturer because of the low bar for trade libel claims sought by Appellant in this case. Not only will this almost certainly result in a material decline in such critical publications, but may leave the medical industry left to rely solely on the studies and trials conducted by manufactures themselves. Such one-sided research and reporting benefits only the drug companies and not the interests of patients and the public at large. *Containment Techs. Grp., Inc. v. Am. Soc. of Health Sys. Pharmacists*, 2009 WL 838549, at *1 (S.D. Ind. Mar. 26, 2009) ("A suit for defamation merely chills attempts at open academic debate and genuine sharing of information. Containment Tech's defamation claims therefore must be dismissed.").

To put it simply, the Lower Court's decision should be upheld to avoid impacting and limiting public scientific thought, debate and progression. Merely because a party may be negatively impacted as a result of research findings does not provide that party with a cause of action to recoup those losses. Instead, Appellant should challenge the results of the publications not in the courts, but through its own trials, publications and commentary. *See ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 2012 WL 1835671, at *10 (W.D.N.Y. May 18, 2012), *aff'd,* 720 F.3d 490 (2d Cir. 2013) (" Because the Article is not misleading with respect to the facts on which it is and is not based, any perceived fault in the method by which the authors reached

their conclusions should be subjected to peer review rather than judicial review."); *Underwager v. Salter*, 22 F.3d 730, 736 (7th Cir. 1994) ("Scientific controversies must be settled by the methods of science rather than by the methods of litigation."); *Saad v. Am. Diabetes Ass'n*, 123 F. Supp. 3d 175, 179 (D. Mass. 2015) ("The dispute between Dr. Saad and the ADA over the reliability of the data in his articles is not fit for resolution in the form of a defamation lawsuit. Instead, this is a case where the trial of ideas plays out in the pages of peer-reviewed journals, and the scientific public sits as the jury.") (internal quotation marks omitted).

### c. The Lower Court's Opinion Does not Create a Categorical Exception to Trade Libel Causes of Action

The Lower Court's Opinion correctly applies prevailing law to the facts as alleged by Appellant in its Complaint. In an effort to convince this Court otherwise, Appellant's brief rests on a fundamental mischaracterization of the Lower Court's Opinion. Appellant contends that the Lower Court's Opinion created a "categorical exception to New Jersey trade libel law for *any* purportedly scientific claim made in an academic journal—no matter how inaccurate, malicious, or harmful." App. Br. at 1. Appellant further claims that the Opinion "would immunize from liability completely false claims made in purported 'academic journals[.]'" App. Br. at 2.

Appellant, however, overstates the scope of the Opinion in an attempt to manufacture error on the part of the Lower Court. Indeed, Appellant proffers that, absent a remand, *no* trade libel case can proceed in the scientific community. The

scope of the Lower Court's decision, however, is properly qualified and conditioned on the set of facts presented in Appellant's Complaint, which clearly do not meet the standard for a viable trade libel claim.

Contrary to Appellant's position, the Lower Court did not impose a "*per se*" rule on libel claims with respect to scientific journals. Instead, the Lower Court's well-reasoned opinion makes clear that a libel claim *may exist* where the "scientific article ***falsified the data*** from which [the author] drew her conclusions;" a fact that is not asserted in Appellant's Complaint. *Pacira*, 583 F. Supp 3d at 659. On that issue, the Lower Court reasoned that Appellant failed to allege anything more than a "mere dispute over methodology and in no way suggests that any underlying data was falsified." *Id.* at 660 ("While Plaintiff has perhaps identified grounds for legitimate scholarly debate, it cannot breach the legal protection otherwise afforded to scientific conclusions.").

This carveout, which Pacira fails to address in its brief, is not only legally accurate, but also entirely sensical. It provides companies like Pacira the opportunity to address real, actionable misconduct, while at the same time providing scientific publishers, contributors, editors, and authors with the security of knowing that as long as they stay inbounds of those parameters, they cannot be sued for libel. *ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490, 498 (2d Cir. 2013) (concluding that "to the extent a speaker or author draws conclusions from non-fraudulent data,

12

based on accurate descriptions of the data and methodology underlying those conclusions, on subjects about which there is legitimate ongoing scientific disagreement, those statements are not grounds for a claim of false advertising under the Lanham Act.").  Accordingly, Appellant's appeal should be denied and the decision of the Lower Court affirmed.

## V.    CONCLUSION

The American Society for Clinical Pharmacology & Therapeutics respectfully requests that this Court uphold and affirm the decision of the Lower Court.  Scientific debate and peer-reviewed journals are critical to the advancement of modern drug development and medicine.  Without it, the safety, effectiveness, and reliability of drugs and other therapies might be compromised.  Contributors, authors, editors, and publishers must be reassured that their speech in the context of such scientific research and debate is protected.

Respectfully submitted,

/s/ Steven E. Tiller
**Steven E. Tiller**
  stiller@wtplaw.com
**Aaron A. Nichols**
  anichols@wtplaw.com
**WHITEFORD, TAYLOR**
  **& PRESTON LLP**
Seven Saint Paul Street, Suite 1500
Baltimore, Maryland 21202
P: (410) 347-8739
*Attorney for Amicus Curiae*
*The American Society For Clinical*
*Pharmacology & Therapeutics*

# COMBINED CERTIFICATIONS

I, Steven E. Tiller, hereby certify:

1.  Pursuant to Local Rule 46.1, that Steven E. Tiller is a member in good standing of the bar for the United States Court of Appeals for the Third Circuit.

2.  That this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 2,926 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

3.  That this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5), and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced serif typeface using Microsoft Office Word 2016 in 14-point Times New Roman font.

4.  That text of the electronic brief is identical to the text in the paper copies.

5.  That a virus detection program (Webroot Secure Anywhere Endpoint Protection, Version 9.0.31.86) has been run on the electronic file and no virus was detected.

Dated:  September 30, 2022          */s/ Steven E. Tiller*
                                    *Attorney for Amicus Curiae*
                                    *The American Society For Clinical*
                                    *Pharmacology & Therapeutics*

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that the Amicus Curiae Brief was filed electronically with the Clerk of the Court for the United States Court of Appeals for the Third Circuit using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Dated: September 30, 2022

*/s/ Steven E. Tiller*
*Attorney for Amicus Curiae*
*The American Society For Clinical*
*Pharmacology & Therapeutics*