No. 2022-1411

# United States Court of Appeals for the Third Circuit

PACIRA BIOSCIENCES, INC.,
*Appellant*,

v.

AMERICAN SOCIETY OF ANESTHESIOLOGISTS, INC., ET AL.,
*Appellees*.

On Appeal From the United States District Court
for the District of New Jersey
No. 2:21-cv-09264 (MCA)

## REPLY BRIEF FOR APPELLANT PACIRA BIOSCIENCES, INC.

Gregory G. Garre
Michael E. Bern
Allen M. Gardner
Sarah M. Gragert
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC  20004
(202) 637-2207

November 14, 2022

*Counsel for Appellant Pacira BioSciences, Inc.*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................. ii

INTRODUCTION ......................................................................... 1

ARGUMENT .............................................................................. 4

I.  THE DISTRICT COURT ERRED BY CREATING A NEW
    CATEGORICAL EXCEPTION IN NEW JERSEY TRADE LIBEL ............ 4

    A.  The District Court Adopted A Categorical Rule ................... 4

    B.  The District Court's Categorical Rule Contradicts New Jersey
        Law ............................................................................ 5

    C.  The Categorical Rule Is Fatally Flawed .............................. 10

II. PACIRA SUFFICIENTLY ALLEGED A CLAIM FOR TRADE
    LIBEL ................................................................................ 15

    A.  Pacira Sufficiently Alleged False Statements ...................... 16

        1.  The Hussain Meta-Analysis .................................... 16

        2.  The Ilfeld Review ................................................ 18

        3.  The CME Materials .............................................. 19

        4.  The McCann Editorial And Podcast ......................... 19

    A.  Pacira Sufficiently Alleged The Other Elements Of Trade Libel ....... 19

        1.  Actual Malice .................................................... 19

        2.  Damages .......................................................... 22

III. THE DISTRICT COURT ERRED BY DENYING LEAVE TO
     AMEND ............................................................................. 22

IV.  THE JURISDICTIONAL ARGUMENTS ARE MERITLESS ............... 25

CONCLUSION ............................................................................ 29

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Calder v. Jones*,
465 U.S. 783 (1984)................................................................26, 27

*Christy v. Pennsylvania Turnpike Commission*,
54 F.3d 1140 (3d Cir. 1995) ...............................................28

*Churchill Downs, Inc. v. NLR Entertainment, LLC*,
2015 WL 5854134 (D.N.J. Oct. 5, 2015) ...........................20

*City of Austin v. Reagan National Advertising of Austin, LLC*,
142 S. Ct. 1464 (2022)........................................................14

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579 (1993)............................................................11

*EF Operating Corp. v. American Buildings*,
993 F.2d 1046 (3d Cir. 1993) .............................................26

*Farber v. City of Paterson*,
2006 WL 3485919 (D.N.J. Nov. 29, 2006) ..........................6

*Ferring Pharmaceuticals, Inc. v. Braintree Laboratories, Inc.*,
38 F. Supp. 3d 169 (D. Mass. 2014)......................................7

*Floorgraphics, Inc. v. News America Marketing In-Store Services, Inc.*,
2006 WL 2846268 (D.N.J. Sept. 29, 2006).........................22

*Johnson & Johnson-Merck Consumer Pharmaceuticals Co. v. Procter & Gamble Co.*,
285 F. Supp. 2d 389 (S.D.N.Y. 2003) ...................................7

*Kotlikoff v. Community News*,
444 A.2d 1086 (N.J. 1982) ...................................................9

*Kovats v. Rutgers, State University*,
822 F.2d 1303 (3d Cir. 1987) .............................................28

**Page(s)**

*Mayflower Transit, LLC v. Prince*,
    314 F. Supp. 2d 362 (D.N.J. 2004) ....................................................6

*McCafferty v. Newsweek Media Group, Ltd.*,
    955 F.3d 352 (3d Cir. 2020) ..............................................................21

*Mullins v. Moore*,
    1992 WL 14354 (Ohio Ct. App. Jan. 22, 1992) .................................27

*NXIVM Corp. v. Sutton*,
    2007 WL 1876496 (D.N.J. June 27, 2007).........................................12

*ONY, Inc. v. Cornerstone Therapeutics, Inc.*,
    720 F.3d 490 (2d Cir. 2013) .................................................7, 8, 18, 23

*Patel v. Soriano*,
    848 A.2d 803 (N.J. Super. Ct. App. Div. 2004) .................................22

*Pennhurst State School & Hospital v. Halderman*,
    465 U.S. 89 (1984)...............................................................................28

*Process Controls International, Inc. v. Emerson Process
Management*,
    753 F. Supp. 2d 912 (E.D. Mo. 2010) ..................................................7

*Read v. Profeta*,
    397 F. Supp. 3d 597 (D.N.J. 2019).......................................................6

*Rodio v. Smith*,
    587 A.2d 621 (N.J. 1991) ...................................................................13

*Toys "R" Us, Inc. v. Step Two, S.A.*,
    318 F.3d 446 (3d Cir. 2003) ...............................................................28

*United States ex rel. Zizic v. Q2Administrators, LLC*,
    728 F.3d 228 (3d Cir. 2013) ...............................................................25

*Walden v. Fiore*,
    571 U.S. 277 (2014).............................................................................26

*Ward v. Zelikovsky*,
    643 A.2d 972 (N.J. 1994) .....................................................................9

**Page(s)**

*Wolfe v. Gooding & Co.*,
    2017 WL 3977920 (D.N.J. Sept. 11, 2017) .......................................................20

*Yang v. Lin*,
    2022 WL 2389300 (D.N.J. July 1, 2022) ...........................................................6

## STATUTES

Ohio Rev. Code Ann. § 9.86.......................................................................27

Ohio Rev. Code Ann. § 2743.02(F)............................................................27

## OTHER AUTHORITIES

Alessandro De Cassai et al., *Inappropriate Citation of Retracted*
    *Articles in Anesthesiology and Intensive Care Medicine*
    *Publications*, 137 Anesthesiology 341 (2022) ...................................12

Fed. R. Civ. P. 15(a)(2)..............................................................................24

Evan D. Kharasch, *How to prepare a (successful) original research*
    *manuscript*, YouTube (Sept. 13, 2022),
    https://www.youtube.com/watch?v=owl_L-2YCYs&t=1s ...............................11

# INTRODUCTION

The district court created a categorical exception to New Jersey law under which any purportedly scientific claim in an academic journal that does not involve falsified data is incapable of being defamatory. As Pacira explained, that categorical rule is incompatible with New Jersey law, deeply unsound, and unnecessary (because defamation law itself can police Defendants' concerns). Because the district court's decision granting Pacira's motion to dismiss is based on that legally erroneous rule, the district court's decision must be reversed and the case remanded.

Defendants devote much of their response to running from the decision below. Defendants repeatedly deny that the court adopted a "categorical" rule only to eventually admit just that. They insist that the district court applied New Jersey's three-pronged test for assessing whether a claim is capable of defamatory meaning, but the district court never once mentioned, let alone analyzed, those three prongs. Defendants also argue that the court's categorical rule is a "straightforward" application of New Jersey law, but identify no New Jersey decision that has ever adopted this novel rule. Defendants' struggle to recharacterize the decision below underscores that the decision cannot stand on its own terms.

Defendants also ignore the serious flaws inherent in the district court's categorical rule. They do not contest that the district court's rule would shield even *intentionally* false statements, no matter how inaccurate or harmful. Nor do

Defendants offer any response to the First Amendment problems that arise from the district court's content-based rule singling out scientific statements for special treatment. And their flawed insistence that the academic-journal publishing process is sufficient to prevent false claims ignores that academic journals are neither insulated from nor always capable of rooting out false and defamatory speech—something *Anesthesiology*'s own editor-in-chief has repeatedly admitted.

 Defendants and their *amici* also suggest a parade of horribles would follow from simply applying the same defamation principles applicable to other publications to false statements in academic journals. But even when (as here) they have merit, defamation and trade libel claims are not easy to make. The settled requirements for making a claim will protect against the concerns raised by *amici*. And holding parties accountable for false and harmful speech—made with actual malice—will no more chill academic speech than it does journalism or the many other forms of speech touched by defamation and trade libel law. There is no basis to take the extreme and constitutionally problematic step of holding that scientific statements in academic journals alone are categorically immune from scrutiny.

When it comes to the actual statements Pacira challenges, Defendants have little to say. Rather than defend the accuracy of their statements, Defendants now back away from their published claims, characterizing them as mere opinions. But claims about whether EXPAREL reduces pain more than standard analgesics are

capable of being proven true or false. Indeed, *Anesthesiology* itself characterized Defendants' statements as "true," not opinions. Defendants found that EXPAREL provides "statistically significant improvement" in pain scores relative to standard analgesics, and conceded that their initial analysis of EXPAREL studies showed a "robust benefit favoring liposomal bupivacaine" over those comparators; they therefore made false statements by claiming that EXPAREL is "not superior" to those comparators at improving patients' pain.

Perhaps recognizing that the district court's categorical rule is indefensible, Defendants make a hodgepodge of alternative arguments not addressed by the district court below. But to the extent this Court chooses to address them in the first instance, this Court should reject them. Pacira adequately pled the other elements of its trade libel claim, and Defendants' various jurisdictional arguments, including its eleventh-hour personal jurisdiction argument, are unpersuasive. Defendants aimed their libel at Pacira, which is located in New Jersey, and Pacira experienced the effects of Defendants' misconduct in that State.

In short, the decision below should be reversed so that Pacira may continue to press its trade libel claims under the settled standards for such claims.

**ARGUMENT**

## I.    THE DISTRICT COURT ERRED BY CREATING A NEW CATEGORICAL EXCEPTION IN NEW JERSEY TRADE LIBEL

The district court dismissed Pacira's claims upon holding that "a scientific conclusion based on nonfraudulent data in an academic publication is not a 'fact' that can be proven false through litigation." JA5.  Although Defendants try to defend the district court's categorical rule as both sound and a straightforward application of New Jersey law, it is neither.  This Court should reverse.

### A.    The District Court Adopted A Categorical Rule

Defendants initially insist that the district court did *not* in fact adopt a "categorical rule."  Defs.Br. 20; *see also* Defs.Br. 22 (the court did not "establish[] a new 'categorical rule'"); Defs.Br. 27 ("Pacira is wrong to assert that the district court announced a new categorical rule.").  Some *amici* make the same puzzling claim.  *See, e.g.*, Ass'n Am. Publishers et al. Br. 6, ECF 47.

But Defendants ultimately concede the point—admitting that the district court held that any scientific statement in an academic journal that does not rely on falsified data cannot be false or defamatory as a matter of law.  *See* Defs.Br. 27 (citing JA5).  Under that unconditional holding, the content of the scientific claim is irrelevant—no matter how inaccurate or how maliciously made.  The district court confirmed this by denying Pacira leave to amend—holding that no amount of evidence showing Defendants' claims to be "inaccurate" could salvage Pacira's

claims, "[i]n light of the Court's holding" that such statements are "incapable of defamatory meaning."  JA11; *see also infra* Part III.

Lest there be any doubt, Defendants eventually acknowledge that the district court's rule immunizes an entire "*category* of speech" from scrutiny under New Jersey defamation law.  Defs.Br. 31 (emphasis added).  The question on appeal is thus not whether the district court adopted a categorical rule—it plainly did.  Rather, the question is whether that rule should be allowed to stand.  Because it is inconsistent with New Jersey law and deeply flawed, the answer is no.

## B.   The District Court's Categorical Rule Contradicts New Jersey Law

The district court's categorical rule finds no support in New Jersey law.  Indeed, Defendants are unable to identify a *single* New Jersey case articulating or applying it.  Neither Defendants nor their *amici* point to any case holding that scientific claims in academic journals based on nonfraudulent data are unconditionally "not … 'fact[s]' that can be proven false through litigation."  JA5.  To the contrary, New Jersey's courts have recognized in a variety of contexts that scientific statements—like any statements—may be factual (and false) in nature.  *See* P.Br. 23-25.

1.   To determine whether a particular statement is capable of defamatory meaning, New Jersey law requires a fact-dependent inquiry into the "content," "verifiability," and "context" of that statement.  *See* P.Br. 21-23.  Defendants admit

that New Jersey mandates this three-pronged analysis.  Defs.Br. 22-23.  But the

district court never mentioned—let alone applied—New Jersey's three-pronged test,

in contrast to numerous other district courts that have done so.  *Compare* JA3-6, *with*

*Farber v. City of Paterson*, 2006 WL 3485919, at *5-6 (D.N.J. Nov. 29, 2006), *Yang*

*v. Lin*, 2022 WL 2389300, at *6 (D.N.J. July 1, 2022), *and Mayflower Transit, LLC*

*v. Prince*, 314 F. Supp. 2d 362, 372-73 (D.N.J. 2004).  Instead, the district court

short-circuited New Jersey's required inquiry by holding that scientific claims in

academic journals are categorically incapable of defamatory meaning.

Defendants try to reconcile that approach with New Jersey law by insisting

that the district court's rule represented a "straightforward" (if silent) application of

New Jersey law.  Defs.Br. 22-27.  That does not withstand scrutiny.  Defendants

argue that the district court's rule "accords with New Jersey law" by pointing to

*Read v. Profeta*, 397 F. Supp. 3d 597, 653 (D.N.J. 2019).  Defs.Br. 27.  But *Read*

did not address academic publications or scientific claims at all.  Instead, the court

dismissed a trade libel claim against a newspaper, which merely reported a

businessman's complaint that his ideas had been "stolen."  397 F. Supp. 3d at 650,

652-53.  *Read* offers no support for the district court's rule.

Defendants' attempt to reimagine the district court's holding as actually

employing New Jersey's three-part inquiry fares no better.  Defendants suggest, for

instance, that the court first assessed "verifiability" under New Jersey law,

concluding that scientific claims in academic journals are incapable of being verified. Defs.Br. 24-25. But the court does not cite a single New Jersey case for that proposition. For good reason: While some scientific claims undoubtedly constitute opinions, countless scientific claims *are* capable of verification. That is often the point of science, and academic journals in particular: to evaluate whether a given scientific claim is true or false.

For that reason, courts routinely hold that scientific claims—including claims that a given product or method is superior or inferior—are verifiable and capable of being proven false. *See, e.g.*, *Ferring Pharms., Inc. v. Braintree Laboratories, Inc.*, 38 F. Supp. 3d 169, 178 (D. Mass. 2014) ("A claim to 'superior cleansing efficacy', backed up by study results, is … a verifiable claim …."); *Process Controls Int'l, Inc. v. Emerson Process Mgmt.*, 753 F. Supp. 2d 912, 930 (E.D. Mo. 2010) (finding statements regarding the relative superior safety of reassembled products "capable of being proved false" (citation omitted)); *Johnson & Johnson-Merck Consumer Pharms. Co. v. Procter & Gamble Co.*, 285 F. Supp. 2d 389, 391 (S.D.N.Y. 2003) (determining claim that drug provides 24 hours of relief to be false). New Jersey's courts are no different. *See* P.Br. 23-25.

Defendants rely heavily on *ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490 (2d Cir. 2013), but they barely address Pacira's discussion of that case, P.Br. 27-29, except to emphasize that *ONY*, although a false advertising case, also

7

addressed the reach of defamation claims, Defs.Br. 26. But *ONY*'s suggestion that the line between actionable and non-actionable speech is identical under the Lanham Act, consumer protection law, and defamation law, *see* 720 F.3d at 498, undercuts, rather than aids, Defendants' argument—because scientific statements *are* indisputably actionable under the Lanham Act and New Jersey consumer protection law. *See* P.Br. 23-25. Defendants' reliance on *ONY* only underscores the broad consequences for myriad legal doctrines if the district court's rule is upheld. *Id.*

Had the court properly evaluated Pacira's claims, it should have had little difficulty determining that the particular statements Pacira challenges are capable of being proven true or false. *Anesthesiology* itself, in CME questions provided in connection with the articles at issue, characterized the article's claims as "true," not as mere opinions. *See* JA164 (Q.2) (identifying as "true" the statement that "liposomal bupivacaine provides inferior analgesia"). Defendants cannot tell their audience that their claims are truthful while defending those statements to this Court as mere opinions incapable of being proven true or false.

2.     Defendants also invoke New Jersey law governing opinions in an attempt to show that their statements are incapable of defamatory meaning. But that argument assumes the conclusion that Defendants' statements—along with every other scientific claim across every other academic journal—*are* mere opinions, rather than factual claims. That proposition is wrong, both as a categorical matter

and as applied to Defendants' particular statements. *See* P.Br. 40-53; *infra* Part II.A.[1]

Even if Defendants' statements were "opinions," however, Defendants are wrong that New Jersey law would not permit a trade libel action. *See, e.g.*, Defs.Br. 2 ("Pacira's allegations challenge scientific opinions and thus, as a matter of law, cannot give rise to a trade libel claim."). Under New Jersey law—as well as many other states' laws—an opinion statement *is* actionable when it "implies underlying objective facts that are false." *Ward v. Zelikovsky*, 643 A.2d 972, 979 (N.J. 1994); *see also id.* (there is no "'wholesale defamation exception for anything that might be labeled opinion'" (citation omitted)); P.Br. 22. Pacira alleged that here. *See* P.Br. 41; *see also, e.g.*, P.Br. 46-47 (explaining the Hussain Article "misrepresent[ed] the data that purportedly supported its conclusions" by failing to follow its own criteria for what articles to include, and therefore excluding studies favorable to Pacira).

In short, Defendants concede that the district court was required to apply New Jersey's three-pronged inquiry, but cannot show where or how the court did so. That is a sufficient basis to reverse.

---

[1] Defendants' reliance on *Kotlikoff v. Community News*, 444 A.2d 1086, 1088 (N.J. 1982), is therefore off point. The statements challenged here are not "pure opinions" but empirical assertions (capable of being proven false) about the pain relief EXPAREL offers relative to standard analgesics.

### C.    The Categorical Rule Is Fatally Flawed

The district court's categorical rule is also deeply flawed in its own right.  As Pacira has explained, the court's rule is unsound, unworkable, and raises serious First Amendment difficulties.    P.Br. 29-38.    Defendants offer no compelling response.

1.    As Pacira noted in its opening brief, the district court's rule creates a dangerous invitation to engage in trade libel, "inoculat[ing] from legal scrutiny even *purposefully inaccurate* claims about important scientific facts."  P.Br. 1.  So long as it does not rely on falsified data, a speaker is immune for any scientific claim made in an academic journal.  Such a rule would shield speakers from liability for making false claims, even if intended to mislead readers and causing real-world harm.  If the decision below is affirmed, it will invite competitors or others with illicit agendas to turn to academic journals to spread false and defamatory statements about products or results.

Defendants neither dispute nor offer any solution to that serious problem.  Defendants note that journal articles may be found defamatory under the court's rule in limited circumstances, such as when a speaker "fabricate[s] the … data" on which he relies. Defs.Br. 32 (second alteration in original) (citation omitted).  But as Pacira has explained, speakers can easily make defamatory claims without relying on

10

falsified data.  P.Br. 33.  That anemic constraint provides little protection against false claims.

Nor does immunizing only statements in academic journals.  As Defendant Kharasch himself admits, in a presentation to prospective *Anesthesiology* authors, "[p]ublication is no guarantee of truth or quality."  Evan D. Kharasch, *How to prepare a (successful) original research manuscript*, YouTube (Sept. 13, 2022), https://www.youtube.com/watch?v=owl_L-2YCYs&t=1s (slide at 2:07-4:54); *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 593 (1993) ("Publication … does not necessarily correlate with reliability.").  The district court's rule will leave parties powerless to prevent even intentionally false statements about their products or services.

2.    Defendants also fail to offer any persuasive justification for affording categorical protection to statements in academic journals.  Defendants cannot explain how the same statement, by the same speaker, is categorically incapable of falsity when published in an academic journal, but actionable and false when published in a magazine or stated on television.  Defendants argue that publication in an academic journal allows scientists to analyze or test the speaker's claims.  Defs.Br. 30.  But that is no answer to why the same claim can only be an opinion when published in academic journals, while being a false statement of fact when made anywhere else.

11

Nor does the peer-review process justify different treatment of academic journals. *See* Defs.Br. 29-30; JA5; *see also* AMA et al. *Amici* Br. 10-11, ECF 44. As Pacira's opening brief underscored, peer review is far from a perfect gatekeeper against false statements. P.Br. 29-31 (collecting examples). Indeed, as *Anesthesiology* itself has recognized, it is commonplace for academic journals to publish inaccurate claims notwithstanding the peer review process. *See* Alessandro De Cassai et al., *Inappropriate Citation of Retracted Articles in Anesthesiology and Intensive Care Medicine Publications*, 137 Anesthesiology 341, 341 (2022) ("Literature on anesthesiology and intensive care medicine, as in other fields of science, is not immune to retracted literature, with intentional misconduct being the main cause of retraction."). Peer-review cannot displace the need for case-specific evaluation of whether statements made in academic journals present opinions or factual claims.

To be sure, context can be relevant to that inquiry. *See, e.g.*, Defs.Br. 31 (collecting cases). But even the cases on which Defendants rely refute the notion that statements in scholarly journals *categorically* constitute opinions rather than factual claims. *See, e.g.*, *NXIVM Corp. v. Sutton*, 2007 WL 1876496, at *10 (D.N.J. June 27, 2007) (treating some challenged statements in scholarly article as "verifiable statements of fact"). The district court was therefore wrong to treat as decisive whether the statements were made in an academic journal.

3.    Defendants do not contest that New Jersey courts have found that scientific claims may be false, and therefore actionable as trade libel, as violations of consumer protection laws, or under other statutory regimes. But they brush aside those cases as dealing with "commercial speech." Defs.Br. 28-30 & n.5. That misses the point. While "the Constitution accords lesser protection" to commercial speech, Defs.Br. 28, it does not treat scientific claims in advertisements as factual claims while treating the same statements in academic journals as opinions. Defendants' focus on commercial speech is thus a *non sequitur*. What matters is that New Jersey recognizes that scientific claims—just like claims about any other subject—are capable of being proven false. The district court's rule is incompatible with that authority.

If anything, Defendants' distinction between academic journals and commercial speech has it backwards. The different context of commercial speech makes it *more* likely that such speech would be understood as opinion, not less. The "general tenor and expression" of commercial advertisement alerts readers that the speaker's goal is to convey a company's opinion about the virtues of its product. Indeed, such speech is often dismissed as puffery. *Rodio v. Smith*, 587 A.2d 621, 624 (N.J. 1991) ("You're in good hands with Allstate" was puffery, not fact.). In an academic journal, by contrast, readers expect scientific claims premised on studies or statistics to present unvarnished *facts* about the world. To the extent that New

Jersey law recognizes that false assertions of fact may be found even within commercial speech, there is no reason why it would not recognize they can be found in academic journals as well.[2]

4.    Finally, the district court's categorical rule raises serious First Amendment concerns.  *See* P.Br. 36-38.  Neither Defendants nor their *amici* offer any serious response, ignoring recent Supreme Court precedent subjecting speech regulations that "appl[y] to particular speech because of the topic discussed or the idea or message expressed" to strict scrutiny.  *City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 142 S. Ct. 1464, 1471 (2022).  Defendants fail to show that according different treatment to "scientific" statements is anything other than the kind of content-based distinction that warrants heightened First Amendment scrutiny.  *See* JA5.

It is no answer to say, as Defendants do, that there is no such thing as a false *idea*.  Defs.Br. 33.  To treat all *scientific* claims in a given medium as opinions, while treating claims about any other subject as capable of falsity imposes a content-based distinction inherently suspect under the First Amendment.  In any event, Defendants'

---

[2]    Some *amici* insist that in the context of academic journals, the reader "understands that scientific conclusions are matters of opinion, not of fact," because scientific claims are "subject to revision."  Council of Med. Specialty Soc'ys Br. 11, ECF No. 50.  But the fact that scientific claims are often withdrawn when proven erroneous only underscores that they are capable of being verified.

premise is itself false. Whether Pacira's product offers superior or inferior pain relief to standard analgesics is not an amorphous "idea" incapable of verification, but a factual claim that is capable of being proven true or false—precisely the reason why scientists conduct such studies in the first place.

Defendants' *amici* press vague policy concerns about how trade libel law interacts with the First Amendment. For example, the Foundation for Individual Rights and Expression urges that "[s]cientific questions should be debated using counterspeech, not litigation." *See, e.g.*, Br. 4, ECF No. 40. But that argument could be made in any libel case; it provides no basis to treat scientific claims differently. In any event, Pacira *did* seek to engage in counterspeech by seeking to respond to the inaccuracies of Defendants' articles in *Anesthesiology*; it brought this suit when Defendants refused to allow it. *See* P.Br. 32; JA1113-14.

As Pacira has explained, the law of trade libel already provides robust protection from meritless claims. P.Br. 33-34. Defendants point to no reason why courts must protect even those engaged in making reckless or intentional false claims—particularly where those falsehoods impose real-world harm.

## II.    PACIRA SUFFICIENTLY ALLEGED A CLAIM FOR TRADE LIBEL

Because the district court's decision dismissing this action is based on a legally erroneous rule, the decision below cannot stand and, at a minimum, this Court should reverse and remand. Although the Court need go no further to decide this

appeal, Defendants' statements readily meet the standard for alleging trade libel under New Jersey law.  Pacira alleged that each statement was false and made with actual malice, and detailed the damages it suffered as a result of those statements.

### A.    Pacira Sufficiently Alleged False Statements

#### 1.    *The Hussain Meta-Analysis*

As Pacira detailed in its opening brief, Hussain and his co-authors wrongly declared EXPAREL "not superior" to local anesthetics, misrepresented their own data, and contradicted themselves about the quality of their data.  P.Br. 41-48.  In response, Defendants mischaracterize Pacira's allegations as merely concerning "methodological flaws."  Defs.Br. 34 (quoting JA6).  While Pacira *did* allege that Hussain's article *is* replete with glaring methodological errors, that is far from Pacira's only allegation.  Although the title of Defendants' article proclaims in bold and large letters that EXPAREL is "not superior" to local anesthetics, that contradicts Hussain's data, which found EXPAREL offered a "statistically significant … improvement over standard bupivacaine."  Defs.Br. 35 (alteration in original) (emphasis and citation omitted).  It also conflicts with Defendants' buried acknowledgment at the end of the article that their initial analysis showed a "robust benefit favoring perineural liposomal bupivacaine."  JA88.[3]

---

[3] That robust benefit was diminished only when Defendants arbitrarily excluded an industry-sponsored trial from the results of their meta-analysis.  JA88.

Defendants protest that EXPAREL's superiority to nonliposomal bupivacaine is not (in their opinion) "clinically" meaningful. *Id.* But Defendants' own data show that is incorrect—even under Defendants' own test—with respect to patients with severe pain. *See* P.Br. 45. And more fundamentally, Defendants' view about *whether EXPAREL's superiority matters* does not change that it is inaccurate to state that EXPAREL is "not superior."

In any event, even the district court's flawed categorical rule requires scientific speakers to accurately describe their data. *See* JA5. Defendants did not: Hussain and his co-authors claimed their study was comprehensive of all studies that met certain criteria, JA78, but they inexplicably omitted studies meeting that criteria favorable to Pacira while including studies that *did not* meet their criteria,[4] *see* JA51-52; P.Br. 46-47. Defendants offer no response.

Finally, Defendants concede that Hussain and his co-authors "did not assess heterogeneity for pain scores, instead assigning heterogeneity values only for secondary outcomes." Defs.Br. 36. They claim this fact was "fully disclosed," *id.*, but fail to acknowledge that the article declared, without qualification, that "all

---

[4]    *Amici* repeat Defendants' error, saying that "scientific conclusions are rightly treated as non-actionable where, as here, they are published in scholarly journals, describe the research and methods on which they are based, and are not based on falsified data." Ass'n Am. Publishers et al. Br. 4-5, ECF No. 47. If Defendants' *had* accurately described their data, this might be a different case, but they did not.

estimates" of EXPAREL's effects were "characterized by low levels of heterogeneity," JA88. The contradictory "disclosure" on which Defendants rely is buried in a table that *needs to be turned on its side to be read.* JA80, 86. If that paltry asterisk is enough to "readily disclose[] … potential shortcomings," *ONY*, 720 F.3d at 498, that supposed hurdle is no safeguard at all.

## 2.    *The Ilfeld Review*

Pacira identified a series of statements in the Ilfeld Review that are not "opinions" but actionable statements of fact. *See* P.Br. 48-50. The Review purported to conduct a narrative review of the literature on EXPAREL but instead selected inapposite studies; it purported to apply the Cochrane Risk of Bias test, but did so inaccurately; and it purported to make disclosures about the authors' own biases but omitted payments they received from Pacira's competitors. *Id.*

Defendants again fail to respond to the substance of these allegations. Instead, they throw up their hands and contend that Pacira's allegations "only buttress[] the existence of uncertainty" about EXPAREL. Defs.Br. 37. But that is simply non-responsive to Pacira's specific factual allegations of falsity. Defendants again seek to hide behind the district court's categorical rule in order to avoid confronting Pacira's actual allegations.

3.    *The CME Materials*

Defendants posit that the CME Materials were not false because they merely

"accurately summarize[d] the underlying data in the Ilfeld Review."  Defs.Br. 38.

But that is damning to Defendants' case—because the CME Materials described the

Review's conclusions as "*true*," not opinions, *see* JA164-65, underscoring that the

reader was to understand the Review's conclusions as *facts* proven true or false, not

merely the authors' opinions about EXPAREL.  The CME Materials thus belie

Defendants' attempts to construe all their libelous statements as mere opinions.

4.    *The McCann Editorial And Podcast*

Here again, Defendants brush aside the challenged statements as opinion.

Defs.Br. 38.  But both McCann and the Podcast echoed Hussain's and the cover's

"not superior" language, which—as explained above—is a factual claim.  That

McCann's writing was termed an "editorial" does not free McCann to make false

statements of fact.  Defs.Br. 38; JA159.

A.    **Pacira Sufficiently Alleged The Other Elements Of Trade Libel**

1.    *Actual Malice*

Defendants' alternative argument that Pacira failed to allege actual malice is

wholly unpersuasive.  Defs.Br. 40-44.  Pacira's allegations detailed how Defendants

deliberately or recklessly disregarded the falsity of their statements.  The complaint

alleged, for instance, that Defendants' departures from scientific norms were so

19

severe and biased against EXPAREL that they could only stem from an intentional disregard of the truth.   JA53-58, 60, 63-65.   Pacira also pointed to Defendant Kharasch's pro-opioid agenda and incentives to publish misinformation about EXPAREL, as well as several undisclosed conflicts on the part of authors.  P.Br. 50, 54.  That is more than enough to allege actual malice at this stage.

Defendants fail to distinguish the case law cited by Pacira that holds that actual malice is a factual question not ordinarily resolved at the pleading stage.  P.Br. 53 (citing *Churchill Downs, Inc. v. NLR Ent., LLC*, 2015 WL 5854134, at *9 (D.N.J. Oct. 5, 2015)).   Defendants contend that *Wolfe v. Gooding & Co.*, 2017 WL 3977920, at *3-4 (D.N.J. Sept. 11, 2017), does not support Pacira's actual-malice allegations, because in *Wolfe*, the "defendant deliberately disregarded certain information to come to a premeditated outcome" and "[n]o such allegation exists here."   Defs.Br. 41 n.10.   But Pacira alleged precisely that—contending that the Hussain Article's authors deliberately excluded studies favoring EXPAREL in order to reach a premeditated outcome; i.e., to cast unfair and untrue aspersions on EXPAREL's effectiveness.  P.Br. 46-47, 54.

Defendants note a district court's holding that even "'extreme departure from professional standards fails to meet the actual malice standard.'"   Def.Br. 42 (citations omitted).  But when this Court affirmed that case's holding, it articulated the actual standard:  "[E]ven an extreme departure from professional standards,

*without more*, will not support a finding of actual malice." *McCafferty v. Newsweek Media Grp., Ltd.*, 955 F.3d 352, 359 (3d Cir. 2020) (emphasis added) (citation omitted).  Of course, Pacira did not allege Defendants' egregious departures from professional standards were the *only* basis for finding actual malice—it argued that Defendants misrepresented their data, excluded favorable studies that met their criteria for inclusion, and hid critical conflicts, among other things.  P.Br. 18; JA50-58.  And Pacira alleged that certain of these steps could only have been by intentional design and reflected a desire to advance a pro-opioid agenda at Pacira's expense.  P.Br. 18-20; JA50-58, 63-65.

Defendants assert that Pacira's claim that Defendants "'disregard[ed] the large body of research favorable to EXPAREL'" demonstrates mere "carelessness."  Defs.Br. 42 (quoting JA59, 54).  But Pacira has alleged that those choices were not negligence, but a direct product of Defendants' intent to reach a pre-determined outcome.[5]  *See* P.Br. 18.  Defendants may disagree—but that is precisely the kind of fact question appropriate for resolution after discovery, not before it.

In short, Pacira alleged that Defendants libeled EXPAREL with knowledge of the falsity of their statements and provided ample basis for that charge.  JA53-58,

---

[5]    Defendants also argue that actual malice was impossible because the articles were peer-reviewed.  Def.Br. 43-44.  Pacira does not claim that all the peer reviewers were in on the plot; it simply alleges that their review was ineffectual—a problem that plagues the peer-review system generally.  *See supra* Part I.C.2.

63-65. That is more than enough to get past the pleading stage. *See Floorgraphics, Inc. v. News Am. Mktg. In-Store Servs., Inc.*, 2006 WL 2846268, at *6 (D.N.J. Sept. 29, 2006) (finding malice sufficiently alleged where plaintiff "clearly and repeatedly alleges in the Complaint that Defendant 'intentionally' made false statements").

### 2.    *Damages*

On damages, Defendants once more fail to grapple with Pacira's actual allegations. Pacira alleged that existing customers informed it that they would discontinue using EXPAREL after the February 2021 edition of *Anesthesiology*. JA67-68. Pacira subsequently presented evidence that at least one customer has done so. JA1120-21. No more was required at this stage. A plaintiff need plead nothing more than "pecuniary loss that has been realized or liquidated, such as lost sales, or the loss of prospective contracts with customers." *Patel v. Soriano*, 848 A.2d 803, 835 (N.J. Super. Ct. App. Div. 2004) (citation omitted).

Even if this Court believes more is required, Pacira should be afforded leave to amend its complaint. *See* Part III, *infra*.

## III.    THE DISTRICT COURT ERRED BY DENYING LEAVE TO AMEND

Courts must freely grant leave to amend unless amendment would be futile, and that is not the case here. *See* P.Br. 56-58. Rather than defend the district court's finding that amendment was futile—a determination based entirely on its new

categorical rule—Defendants press an array of alternative arguments that the district court never considered, and which are meritless in any event.

The district court denied Pacira leave to amend solely because the court believed amendment to be "futile" "[i]n light of the Court's holding" that categorically shielded scientific statements in academic journals. JA11. That decision was an abuse of discretion, because the categorical rule is wrong as a matter of law. *See supra* Part I.B. This Court should thus, at minimum, vacate and remand with instructions to reconsider Defendants' request for leave to amend its complaint.

Alternatively, this Court could remand with instructions to grant leave to amend. Pacira pointed to substantial new evidence on which it would rely in an amended complaint, including detailed explanations from experts further exposing the inaccuracy of Defendants' statements, outlining their departures from scientific norms, and highlighting Defendants Gabriel and Ilfeld's undisclosed conflicts of interest. These additional facts bolster Pacira's case even under the district court's improperly deferential standard. Defendants ask this Court to go even further than the Second Circuit in *ONY*. *See* 720 F.3d at 498 & n.5 (premising immunity from

suit for scientific publications on authors' "readily disclos[ing] … their potential conflicts of interest"). [6]

Defendants argue that Pacira could have included its new allegations in its original complaint. Defs.Br. 48. But that is not an argument for why amendment is futile, and it contradicts the strong, central tenet of freely granting leave to amend. *See* Fed. R. Civ. P. 15(a)(2).

Defendants also argue that the district court was right to deny leave to amend because Pacira did not attach a draft amended complaint to its filing. Defs.Br. 48-49. But the district court did not deny leave to amend on that ground, but upon its categorical rule. *See* JA11; *see also* Reply Mem. Supp. Mot. Dismiss 11-12, Dkt. 71. In any event, Pacira specifically pointed to the information it would include in an amended complaint in its opposition to Defendants' motion to dismiss, identifying the declarations of experts attached to its motion for a preliminary injunction. *See* Dkt. 70 at 39-40. Pacira is therefore unlike a plaintiff whose "bare request in an opposition to a motion to dismiss—without any indication of the particular grounds

---

[6] Defendants also posit that peer review renders amendment futile because it "obviates any claim of knowledge or reckless disregard of falsity." Defs.Br. 49. That makes no sense. Whether Defendants' reviewers were duped or careless does not speak to whether *Defendants* acted with actual malice. And to the extent that reviewers were misled by Defendants' statements, that only affirms why this action is necessary.

on which amendment is sought[]—does not constitute a motion within the contemplation of Rule 15(a)." *United States ex rel. Zizic v. Q2Administrators, LLC*, 728 F.3d 228, 243 (3d Cir. 2013) (citation omitted).[7]

Even if this Court does not reverse the district court on the merits, it should therefore remand with instructions to permit Pacira to amend its complaint.

## IV.    THE JURISDICTIONAL ARGUMENTS ARE MERITLESS

Oddly, Defendants close their brief by raising *threshold* arguments about this Court's jurisdiction.  That backward approach betrays the weakness of their arguments.  These issues were thoroughly briefed below, and that briefing makes clear that no jurisdictional defect exists.  *See* Opp. Mot. Dismiss, Dkt. 73.  In any event, Pacira would be entitled to jurisdictional discovery before any adverse ruling.

1. Several Defendants contend that this Court lacks personal jurisdiction over them because they do not have adequate contacts with New Jersey.  Defs.Br. 50. That argument is not properly before the Court, because Defendants failed to cross-appeal the ruling below.  It also fails on the merits, because the Complaint adequately alleges that Defendants directed their libelous articles at Pacira and the State of New Jersey, where Pacira is headquartered.

---

[7]    Defendants also argue that leave to amend should be denied because "it is no small matter for scientists … to hire lawyers" to defend their statements.  Defs.Br. 49.  But the Federal Rules do not carve out any profession for special treatment.

Generally, appellees may seek to support the judgment below on any ground supported by the record; however, appellees may not seek to expand or alter the judgment below without filing a cross-appeal.  *See EF Operating Corp. v. Am. Bldgs.*, 993 F.2d 1046, 1048 (3d Cir. 1993).  When a case has been dismissed on the merits, a personal-jurisdiction argument on appeal does not support the judgment on "different grounds" but rather seeks to "vacate" the judgment.  *Id.* at 1049.  Thus, after a dismissal on the merits before the district court, appellees are required to file a cross-appeal in order to raise a personal-jurisdiction defense on appeal.  *Id.*  That rule applies here, and Defendants failure to file a cross-appeal precludes their personal-jurisdiction argument on appeal.

Defendants' arguments also fail on the merits.  It is well-established that defendants who aim tortious conduct at a target state cannot avoid suit in that state simply by directing their tortious conduct from outside state lines.  Thus, in *Calder v. Jones*, 465 U.S. 783 (1984), and *Walden v. Fiore*, 571 U.S. 277 (2014), the Supreme Court recognized that in circumstances akin to those here, a court may exercise personal jurisdiction over an out-of-state author alleged to have targeted an in-state plaintiff through a libelous article published in-state and imposing the brunt of its harmful effect in that forum.  Under that "effects test," *Walden* explained that the "nature of the libel tort" is unique:  "[B]ecause publication to third persons is a necessary element of libel, the defendants' intentional tort *actually occurred in*" the

states where it is published and causes reputational damage. 571 U.S. at 287-88 (emphasis added) (citation omitted).

Here, under the "effects test" articulated in *Calder* and *Walden*, Pacira has done more than enough to allege facts that establish personal jurisdiction over Defendants. Not only were Defendants' articles published in New Jersey—such that the tortious conduct at issue *actually occurred in New Jersey*—but the "focal point both of the [articles] and of the harm suffered" as a result of them is New Jersey, where the company that makes EXPAREL is headquartered. *Calder*, 465 U.S. at 788-89. Defendants' tortious conduct occurred within and specifically targeted this forum, and that is sufficient to establish personal jurisdiction.

2. Several Defendants also contend that they are categorically immune from suit for their publications—no matter how libelous—because they are medical residents or professors at Ohio State University. Defs.Br. 54-56. They first claim immunity under Ohio's statutory immunity regime for state employees. Defs.Br. 55. But those statutes, by their own terms, apply only to actions arising under *Ohio law*, not actions like this one that arise under the law of another state. *See* Ohio Rev. Code Ann. § 9.86 (granting immunity for "any civil action that arises under the law of this state"); *id.* § 2743.02(F) (granting the Ohio Court of Claims with exclusive original jurisdiction to determine immunity "under section 9.86"). Ohio courts have

applied these statutes in that limited way.  *See, e.g.*, *Mullins v. Moore*, 1992 WL 14354, at *2 (Ohio Ct. App. Jan. 22, 1992).

Defendants next contend that they are shielded by immunity under the Eleventh Amendment.  Defs.Br. 55.  That argument fares no better because Defendants do not carry their burden of establishing that the "real, substantial party in interest" in this suit is the State of Ohio, rather than Defendants in their personal capacities.  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984) (citation omitted); *see Christy v. Pa. Tpk. Comm'n*, 54 F.3d 1140, 1144 (3d Cir. 1995) (defendant "bears the burden of production and persuasion" to establish immunity).  Defendants have never attempted to establish that OSU is a state instrumentality for Eleventh Amendment purposes under this Court's rigorous case law.  *See Kovats v. Rutgers, State Univ.*, 822 F.2d 1303, 1310-12 (3d Cir. 1987) (Rutgers University not a state instrumentality).  Nor can Defendants carry their burden to show that judgment against them in this lawsuit would operate against Ohio.  *See* Opp. Mot. Dismiss 16-22, Dkt. 73.

If this Court has any doubt about its jurisdiction, it should remand for jurisdictional discovery.  This Court's liberal standard for jurisdictional discovery allows such discovery so long as the jurisdictional allegations are not "clearly frivolous."  *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) (citation omitted).  Pacira's allegations easily clear that bar, having alleged that

Defendants engaged in tortious publication in New Jersey, that Pacira felt the brunt of the harm in this State, and that Defendants explicitly aimed their statements at this forum. *See* June 25, 2021 Letter, Dkt. 64 (seeking jurisdictional discovery).

## CONCLUSION

This Court should reverse and remand the case for Pacira to continue prosecuting its trade libel claim.

Dated:  November 14, 2022

Respectfully submitted,

*s/ Gregory G. Garre*
Gregory G. Garre
Michael E. Bern
Allen M. Gardner
Sarah M. Gragert
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC  20004
(202) 637-2200

*Counsel for Appellant Pacira BioSciences, Inc.*

## COMBINED CERTIFICATIONS

### 1.    CERTIFICATE OF BAR MEMBERSHIP

I, Gregory G. Garre, counsel for Appellant Pacira BioSciences, Inc., hereby certify pursuant to Rule 28.3(d) that I am a member in good standing of the bar of the Court of Appeals for the Third Circuit.

### 2.    CERTIFICATE OF WORD COUNT

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(B) and Local Rule 32.1, I hereby certify that the foregoing brief contains 6,440 words as counted using the word-count feature in Microsoft Word 365, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).  This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 and a 14-point Times New Roman font.

### 3.    CERTIFICATE OF IDENTICAL BRIEFS

Pursuant to Local Rule 31.1(c), I certify that the text of the electronic and hard copy forms of this brief are identical.

**4.    CERTIFICATE OF VIRUS CHECK**

Pursuant to Local Rule 31.1(c), I certify that a virus check of the electronic

PDF version of this brief was performed using Microsoft Defender Antivirus, which

was updated November 14, 2022, and according to that program no virus was

detected.

Respectfully submitted,

*s/ Gregory G. Garre*
Gregory G. Garre
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC  20004
(202) 637-2207

*Counsel for Pacira BioSciences, Inc.*

Dated:  November 14, 2022

# CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2022, I caused a copy of the foregoing Reply Brief for Appellant Pacira BioSciences, Inc. to be served by electronic means, via the Court's CM/ECF system, on all counsel registered to receive electronic notices.

Respectfully submitted,

*s/ Gregory G. Garre*
Gregory G. Garre
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC  20004
(202) 637-2207

*Counsel for Pacira BioSciences, Inc.*