**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 22-1411

_____

PACIRA BIOSCIENCES, INC.,

Appellant

v.

AMERICAN SOCIETY OF ANESTHESIOLOGISTS, INC.;
EVAN D. KHARASCH; NASIR HUSSAIN; RICHARD
BRULL; BRENDAN SHEEHY; MICHAEL K.
ESSANDOH; DAVID L. STAHL; TRISTAN E. WEAVER;
FARAJ W. ABDALLAH; BRIAN M. ILFELD; JAMES C.
EISENACH; RODNEY A. GABRIEL; MARY ELLEN
MCCANN

_____

On Appeal from the United States District Court
for the District of New Jersey
(No. 2-21-cv-09264)
U.S. District Judge:  Honorable Madeline C. Arleo

_____

Argued March 6, 2023

_____

Before:  SHWARTZ, BIBAS, and AMBRO, <u>Circuit Judges</u>.

(Filed: March 24, 2023)

Michael Bern
Allen M. Gardner
Gregory G. Garre [ARGUED]
Sarah Gragert
Latham & Watkins
555 11th Street, N.W.
Suite 1000
Washington, DC 20004

      Counsel for Plaintiff-Appellant

John A. Boyle
Kevin H. Marino
Marino Tortorella & Boyle
437 Southern Boulevard
Chatham, NJ 07928

Michael B. Carlinsky
Kaitlin P. Sheehan
Ellyde R. Thompson
Quinn Emanuel Urquhart & Sullivan
51 Madison Avenue
22nd Floor
New York, NY 10010

Robert Schwartz
Kathleen M. Sullivan [ARGUED]
Quinn Emanuel Urquhart & Sullivan
865 South Figueroa Street
10th Floor

Los Angeles, CA 90017

      Counsel for Defendants-Appellees

David S. Bloomfield, Jr.
Porter Wright Morris & Arthur
41 South High Street
Suite 2900
Columbus, OH 43215

      Counsel for Defendants-Appellees Nasir Hussain,
      Brendan Sheehy, Michael K. Essandoh,
      David L. Stahl, and Tristan E. Weaver

Eugene Volokh
UCLA School of Law
385 Charles E. Young Drive
Los Angeles, CA 90095

      Counsel for Amicus Appellee
      Foundation for Individual Rights in Education Inc.

Leonard A. Nelson
American Medical Association
Office of General Counsel
330 North Wabash Avenue
Suite 39300
Chicago, IL 60611

      Counsel for Amici Appellee
      American Medical Association and
      Medical Society of New Jersey

Aaron A. Nichols
Steven E. Tiller
Whiteford Taylor & Preston
Seven Saint Paul Street
19th Floor
Baltimore, MD 21202

Counsel for Amicus Appellee
American Society for Clinical Pharmacology &
Therapeutics

Elizabeth A. McNamara
Alison B. Schary
Davis Wright Tremaine
1251 Avenue of the Americas
21st Floor
New York, NY 10020

Counsel for Amici Appellee
Association of American Publishers Inc.,
International Association of Scientific, Technical and
Medical Publishers and
Federation of American Societies for Experimental
Biology

Aaron D. Lindstrom
Barnes & Thornburg
171 Monroe Avenue N.W.
Suite 1000
Grand Rapids, MI 49503

Counsel for Amicus Appellee
Council of Medical Specialty Societies

—————————

OPINION OF THE COURT

—————————

SHWARTZ, Circuit Judge.

Pacira BioSciences, Inc. ("Pacira") sued the American Society of Anesthesiologists, Inc. ("ASA"), the editor-in-chief of its medical journal, and the authors of three articles for statements made about one of Pacira's drug products.[1]  Pacira claims that the statements constitute trade libel.  Because the District Court correctly concluded that the statements that form the basis of Pacira's trade libel claim are nonactionable opinions, Pacira has failed to state a basis for relief.  We will therefore affirm.

I

A

This trade libel action arises out of allegedly false and misleading statements about liposomal bupivacaine, a non-opioid pain medication that Pacira manufactures under the

---

[1] The editor-in-chief is Evan D. Kharasch, and the authors are Nasir Hussain, Richard Brull, Brendan Sheehy, Michael K. Essandoh, David L. Stahl, Tristan E. Weaver, Faraj W. Abdallah, Brian M. Ilfeld, James C. Eisenach, Rodney A. Gabriel, and Mary Ellen McCann.

name EXPAREL.[2]  The drug is a local anesthetic administered at the time of surgery to control post-surgical pain.  According to Pacira, EXPAREL offers longer lasting pain relief than standard local anesthetics.   As of 2020, EXPAREL sales represented nearly all of Pacira's total revenue.

## B

Pacira complains that Defendants published statements in a variety of forms, all of which conveyed their view that EXPAREL is "not superior" to standard analgesics or provides "inferior" pain relief.  See Appellant's Br. at 2, 40; JA62, 67. More specifically, Pacira points to the February 2021 issue of Anesthesiology, the ASA's peer-reviewed academic journal that has over 50,000 subscribers.  The cover of the February 2021 issue states that "Liposomal Bupivacaine Is Not Superior to Standard Local Anesthetics" and contains several articles that Pacira alleges make false and misleading statements disparaging EXPAREL. JA49.  Pacira challenges three articles in Anesthesiology: (1) a meta-analysis of studies examining the efficacy of EXPAREL (the "Hussain Article"), which concludes that the drug is "not superior" to standard anesthetics, JA77; (2) a narrative review of clinical trials involving EXPAREL (the "Ilfeld Review"), which reaches a similar conclusion; and (3) an editorial based on the meta-analysis and narrative review (the "McCann Editorial")

---

[2] The facts are drawn from Pacira's complaint, which we accept as true in accordance with our standard of review for motions under Fed. R. Civ. P. 12(b)(6).  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).

(collectively, the "Articles").[3]  Pacira alleges that the Articles rely on studies that fail to isolate certain variables, reach unqualified conclusions about EXPAREL's efficacy, and discredit industry-funded trials.

Pacira also raises specific issues about each of the Articles.  As to the Hussain Article, Pacira contends that it "cherry-picked" studies that disfavor EXPAREL, JA51, employed a "flawed method" known as "crude pooling,"[4] JA52, and violated "the standards of medical research" by failing to account for the statistical heterogeneity[5] of the studies on which it relied, JA53.  As to the Ilfeld Review, Pacira contends that it failed to discuss the "most relevant anesthesia procedure," JA54, ignored studies favorable to EXPAREL with minimal explanation, and that two of its authors failed to disclose financial conflicts of interest.  As to the McCann Editorial, Pacira alleges that it repeats the conclusions of the Hussain Article and Ilfeld Review, "criticize[s]" "EXPAREL's cost" and "strongly insinuates that the FDA approved EXPAREL with insufficient evidence." JA58.

---

[3] Because the Articles are attached to the complaint as exhibits whose authenticity is not questioned, we may consider them.  McTernan v. City of York, 577 F.3d 521, 526 (3d Cir. 2009).

[4] According to Pacira, crude pooling is a methodology in which results from different studies, analyzing different populations, are grouped together.

[5] In its complaint, Pacira explains that a heterogeneity analysis accounts for differences in population, type of medications, outcome definitions, and design across different studies.

In addition to publishing the Articles, the ASA offered a Continuing Medical Education program (the "CME") that allowed participants to answer questions based on the Articles and receive credit to satisfy medical licensure requirements. Pacira alleges that these questions restate as fact the Articles' conclusions, including that EXPAREL is "inferior" to standard anesthetics, JA62, and that studies favoring EXPAREL are biased. Finally, Anesthesiology produced a podcast (the "Podcast") that also allegedly repeated the conclusions of the Articles "without acknowledging their many flaws." JA65.

## C

Pacira filed a complaint alleging a single count of trade libel. The District Court granted Defendants' motion to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure Rule 12(b)(6), holding that Pacira failed to allege that the statements are susceptible to a defamatory meaning. Pacira Biosciences, Inc. v. Am. Soc'y of Anesthesiologists, Inc., 583 F. Supp. 3d 654, 658 (D.N.J. 2022). The District Court explained that "a scientific conclusion based on nonfraudulent data in an academic publication is not a 'fact' that can be proven false through litigation," and Pacira failed to identify any aspect of the Articles, CME, or Podcast that "bring their conclusions outside the protected realm of scientific opinion." Id. at 659.

Pacira appeals.

8

## II[6]

Defamation and trade libel are similar causes of action but remedy different harms.  See Dairy Stores, Inc. v. Sentinel Publ'g Co., 516 A.2d 220, 224-25 (N.J. 1986).[7]  While defamation remedies harm to one's reputation, trade libel remedies harm to the reputation of one's property or product.[8]

---

[6] The District Court had jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).  We have jurisdiction pursuant to 28 U.S.C. § 1291.  We exercise plenary review of a district court's order granting a motion to dismiss for failure to state a claim, Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220 (3d Cir. 2011), and must determine whether the complaint, construed "in the light most favorable to the plaintiff," Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co., 768 F.3d 284, 290 (3d Cir. 2014) (citation and quotation marks omitted), "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  The parties agree that New Jersey law governs Pacira's claim.

[7] Trade libel has also been referred to as "product disparagement" and "slander of title," among other things, but for consistency, we will use the term trade libel.  See Dairy Stores, 516 A.2d at 224; see also Sys. Operations, Inc. v. Sci. Games Dev. Corp., 555 F.2d 1131, 1138 n.6 (3d Cir. 1977) (noting the "confusing" terminology in this area of law).

[8] To succeed on a trade libel claim under New Jersey law, a plaintiff must prove: "(1) publication (2) with malice (3) of false allegations concerning plaintiff's property or product (4) causing special damages, i.e., pecuniary harm."  Sys.

See id. at 224.  Despite their differences, both causes of action protect similarly important interests in the free flow of information and are thus subject to the same privileges, or limitations, that render certain statements nonactionable.  Id. at 226 ("[A] qualified privilege [for trade libel] should exist wherever it would exist in a defamation action."); see also Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc., 425 U.S. 748, 763-64 (1976) (holding society and consumers both have a strong interest "in the free flow of commercial information").

One such limitation is that opinion statements are generally nonactionable.  Lynch v. N.J. Educ. Ass'n, 735 A.2d 1129, 1137 (N.J. 1999).  Statements of pure opinion, which are those "based on stated facts or facts that are known to the parties or assumed by them to exist," do not provide a basis for relief.  Id. (quoting Dairy Stores, 516 A.2d at 231); see also DeAngelis v. Hill, 847 A.2d 1261, 1269 (N.J. 2004) ("Statements of opinion, as a matter of constitutional law, enjoy absolute immunity." (quoting Dairy Stores, 516 A.2d at 231)).  Mixed opinions, which are opinions based on undisclosed facts or assumptions, are similarly nonactionable "unless they imply false underlying objective facts."  Lynch, 734 A.2d at 1137.  Whether a statement is a nonactionable opinion is a threshold question of law.  Kotlikoff v. Cmty. News, 444 A.2d 1086, 1090 (N.J. 1982).  In making this determination, we consider the (1) content, (2) verifiability, and (3) context of the statements.  Lynch, 735 A.2d at 1136.[9]

_____

Operations, 555 F.2d at 1140; see also Dairy Stores, 516 A.2d at 238 (Garibaldi, J., concurring).

[9] "The higher the 'fact content' of a statement, the more likely that the statement will be actionable."  Lynch, 735 A.2d

As explained below, each consideration supports our conclusion that the statements here are nonactionable opinions.

A

We first examine the content of the statements. "Evaluation of content involves consideration not merely of a statement's literal meaning, but also of the fair and natural meaning that reasonable people of ordinary intelligence would give to it." Id.

Pacira seeks relief based on two statements: (1) that EXPAREL is "not superior" to local anesthesia; and (2) that it is an "inferior analgesic." Appellant's Br. at 2, 40; JA62, 67. Stating that something is "not superior" or "inferior" is the type of "loose" or "figurative" language that the New Jersey Supreme Court has said is "more likely to be deemed non-actionable as rhetorical hyperbole." Ward v. Zelikovsky, 643 A.2d 972, 980 (N.J. 1994) (quoting Milkovich v. Lorain J. Co., 497 U.S. 1, 21 (1990)); cf. Vitamin Energy, LLC v. Evanston Ins. Co., 22 F.4th 386, 394 n.11 (3d Cir. 2022) (noting that general "claims of relative superiority" are nonactionable opinions in advertising context); Ponzio v. Mercedes-Benz USA, LLC, 447 F. Supp. 3d 194, 235 (D.N.J. 2020) (holding statements like Mercedes-Benz cars have "the best possible paint job" were nonactionable opinions); EP Henry Corp. v. Cambridge Pavers, Inc., 383 F. Supp. 3d 343, 350 (D.N.J.

---

at 1137 (quoting Ward v. Zelikovsky, 643 A.2d 972, 979-80 (N.J. 1994)). If a statement could be construed as either fact or opinion, however, we must construe it as an opinion. Id. A contrary presumption would "tend to impose a chilling effect on speech." Id. (quotations omitted).

2019) ("[W]hether something is the 'best' is highly subjective [and] is almost always a matter of opinion[.]" (internal quotation marks omitted)); <u>Hughes v. Panasonic Consumer Elecs. Co.</u>, No. 10-cv-846, 2011 WL 2976839, at *12 (D.N.J. July 21, 2011) (holding statements that the product "create[s] superior image and color quality" were "subjective expressions of opinion").[10] A "fair and natural" reading of these statements shows that these are nonactionable subjective expressions. <u>Lynch</u>, 735 A.2d at 1136.

### B

The verifiability prong also supports the conclusion that the statements are nonactionable opinions. The "concept of verifiability" requires us to determine whether the statement is

---

[10] That these are mostly false advertising cases strengthens, not undermines, our conclusion that the statements here are nonactionable opinions. Commercial advertisements are directed at consumers, whereas peer-reviewed academic journals are generally "directed to the relevant scientific community." <u>ONY, Inc. v. Cornerstone Therapeutics, Inc.</u>, 720 F.3d 490, 496-97 (2d Cir. 2013). If New Jersey courts have concluded that statements of relative superiority would not mislead an average consumer, then similar statements made in an academic journal will not mislead the experts reading the journal. <u>See</u> <u>Eastman Chem. Co. v. Plastipure, Inc.</u>, 775 F.3d 230, 236 (5th Cir. 2014) (holding disputed statements made in sales brochures were actionable because "Eastman did not sue Appellants for publishing an article in a scientific journal. Rather, Eastman sought to enjoin statements made in commercial advertisements and directed at customers").

"capable of . . . truth or falsity." Ward, 643 A.2d at 979.[11] There are two reasons the statements here are not verifiable.

First, the statements are tentative scientific conclusions and were expressly disclosed as such. As the Court of Appeals for the Second Circuit explained:

> Most conclusions contained in a scientific journal article are, in principle, capable of verification or refutation by means of objective proof. Indeed, it is the very premise of the scientific enterprise that it engages with empirically verifiable facts about the universe. At the same time, however, it is the essence of the scientific method that the conclusions of empirical research are tentative and subject to revision, because they represent inferences about the nature of reality based on the results of experimentation and observation.

ONY, Inc. v. Cornerstone Therapeutics, Inc., 720 F.3d 490, 496 (2d Cir. 2013) (quotations and internal citation omitted); see also Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 597 (1993) ("Scientific conclusions are subject to perpetual revision."); cf. United States v. Mitchell, 365 F.3d 215, 252 (3d Cir. 2004) (concluding that, for the purposes of judicial notice, "a scientific conclusion—something which is subject to

---

[11] "Requiring that a statement be verifiable ensures that defendants are not punished for exercising their First Amendment right to express their thoughts." Ward, 643 A.2d at 979.

revision—[is] not a 'fact'").[12]

The statements here expressly claim they are tentative scientific conclusions.  For example, immediately before concluding that EXPAREL is not superior to standard analgesics, the Hussain Article enumerates five "notable limitations" of its study, including "variabilities" that "may have played a confounding effect," "publication bias" in selecting studies, and statistical limitations due "to scarcity of data."  JA88.  As for the Ilfeld Review, Pacira takes issue with its conclusion that "[t]he preponderance of evidence fails to support the routine use of [EXPAREL] over standard local anesthetics," Appellant's Br. at 48, but the Ilfeld Review qualifies its conclusion, stating, "[h]owever, medicine is constantly evolving with ongoing research, and the use of [EXPAREL] for postoperative analgesia will certainly be no different."  JA146.  It then identifies several "knowledge gaps for future research," including improving comparative data for certain metrics.  Id.  Based on these disclosures, it is clear the statements here are tentative scientific conclusions subject to revision.  See, e.g., ONY, 720 F.3d at 498 ("Even if the conclusions authors draw from the results of their data could be actionable, such claims would be weakest when, as here, the authors readily disclosed the potential shortcomings of their methodology[.]").

Second, Pacira fails to appreciate the difference between "verifiability" and "reliability."  Verifiability turns on

---

[12] One court has recently observed that if there is consensus on a scientific issue, then a statement about the issue may be deemed verifiable.  Conformis, Inc. v. Aetna, Inc., 58 F. 4th 517, 533 (1st Cir. 2023).

whether a statement is "capable of . . . truth or falsity," <u>Ward</u>, 643 A.2d at 979, while reliability turns on whether the basis for the statement is capable of being trusted.[13] Pacira's allegations boil down to disagreements about the reliability of the methodology and data underlying the statements.[14] For example, Pacira alleges that the Articles disregarded studies favorable to EXPAREL and that the Ilfeld Review failed to consider a relevant procedure, but allegations that "competent scientists would have included variables that were available to the defendant authors but . . . were not taken into account in their analysis" cannot create an actionable falsehood because they do not bear on whether the statements are verifiable. <u>ONY</u>, 720 F.3d at 497.[15] Pacira also alleges that the Hussain

---

[13] <u>See</u> <u>Reliable</u>, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/reliable (last visited Mar. 6, 2023) (defining reliable as "suitable," "fit to be relied on" or "[d]ependable," which, in turn, is defined as "capable of being trusted").

[14] To be sure, a conclusion drawn from falsified or fraudulent data may be actionable because "there is no constitutional value in false statements of fact." <u>Gertz v. Robert Welch, Inc.</u>, 418 U.S. 323, 340 (1974); <u>see also</u> <u>ONY</u>, 720 F.3d at 497; <u>CrossFit, Inc. v. Nat'l Strength & Conditioning Ass'n</u>, No. 14-cv-1191, 2016 WL 5118530, at *7 (S.D. Cal. Sept. 21, 2016) (holding a statement published in an academic journal was actionable where "a reasonable fact finder could conclude that the [defendant] fabricated the . . . data"). Pacira, however, does not allege that any of the data were falsified.

[15] Pacira's argument that statements in the Ilfeld Review are "false" in part because of the allegedly undisclosed conflicts of interest is unavailing. Appellant's Br. at 50.

Article employed a "flawed method," JA52, but mere disputes about the reliability of a scientific study's disclosed methodology cannot create an actionable falsehood for trade libel, as such disputes do not address whether the statements themselves are verifiable.[16]  See Saad v. Am. Diabetes Ass'n, 123 F. Supp. 3d 175, 179 (D. Mass 2015) ("[T]he reliability of the data in [scientific] articles is not fit for resolution in the form of a defamation lawsuit.").[17]

---

Substantial undisclosed conflicts of interests may be evidence of "actual malice" but have no bearing on whether the statements may be actionable as a threshold matter.

[16] Pacira also argues that the Hussain Article falsely states that studies into EXPAREL were "characterized by low levels of heterogeneity." Appellant's Br. at 47.  As the District Court correctly noted, however, "the Article never claims to have assessed the heterogeneity for pain scores and, in fact, expressly discloses that it did not." Pacira, 583 F. Supp. 3d at 660 (citing JA86).

[17] There are, of course, circumstances in which courts may need to assess the reliability of a scientific study.  Liability under the Lanham Act arises, for example, if the commercial statement is "literally false." Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co., 290 F.3d 578, 586 (3d Cir. 2002).  For certain claims, literal falsity may be established by showing that "the underlying studies upon which the representations are based are not sufficiently reliable to permit one to conclude with reasonable certainty that they established the claim made." Bracco Diagnostics, Inc. v. Amersham Health, Inc., 627 F. Supp. 2d 384, 468 (D.N.J. 2009) (internal quotation omitted).

Our inquiry here is different.  We must determine the threshold question of whether the statements are nonactionable

Pacira's critiques about the Articles' data and methodology may be the basis of future scholarly debate, but they do not form the basis for trade libel under New Jersey law. To conclude otherwise would risk "chilling" the natural development of scientific research and discourse. <u>Kotlikoff</u>, 444 A.2d at 1088; <u>see also</u> <u>ONY</u>, 720 F.3d at 497 (observing that scientific conclusions inspire other scientists to "respond by attempting to replicate the described experiments, conducting their own experiments, or analyzing or refuting the soundness of the experimental design or the validity of the inferences drawn from the results"). Thus, the verifiability factor supports our conclusion that the statements are nonactionable opinions.

C

Finally, the context of the statements further demonstrates that they are nonactionable opinions. In considering context, New Jersey courts examine, among other things, the "medium by which the statement is disseminated and the audience to which it is published." <u>Wilson v. Grant</u>, 687 A.2d 1009, 1014 (N.J. Super. Ct. App. Div. 1996) (internal quotation marks omitted); <u>see also</u> <u>Sciore v. Phung</u>, No. 19-13775, 2022 WL 950261, at *6 (D.N.J. Mar. 30, 2022)

---

pure opinions protected from a trade libel suit. As part of that inquiry, we consider whether the statements can be proven true or false. It is only after establishing the statements can be proven true or false that reliability of the underlying data and methodology may become relevant. Pacira's attacks on Defendants' studies do not answer the question of whether the statements about whether its product is inferior or not superior are verifiable.

(considering fact that the challenged statement was "a restaurant review" on Yelp as part of context analysis); NXIVM Corp. v. Sutton, No. 06-cv-1051, 2007 WL 1876496, at *10 (D.N.J. June 27, 2007) (considering a statement "in the context of a scholarly article").

The statements here were made in a peer-reviewed journal for anesthesiology specialists. While statements are not protected solely because they appear in a peer-reviewed journal, such journals are often "directed to the relevant scientific community." ONY, 720 F.3d at 496-97. Their readers are specialists in their fields and are best positioned to identify opinions and "choose to accept or reject [them] on the basis of an independent evaluation of the facts." Redco Corp. v. CBS, Inc., 758 F.2d 970, 972 (3d Cir. 1985).[18]

---

[18] Although we have not previously applied this principle to scientific conclusions, we have held in other contexts that statements directed at readers who are capable of performing an independent evaluation of the facts upon which an opinion is based support the conclusion that the opinion is nonactionable. See, e.g., Dunn v. Gannett N.Y. Newspapers, Inc., 833 F.2d 446, 454 (3d Cir. 1987) (applying New Jersey law and holding that statements about a mayor were nonactionable opinions because they were "based . . . upon facts that were fully disclosed"); see also McCafferty v. Newsweek Media Grp., Ltd., 955 F.3d 352, 358 (3d Cir. 2020) (statements about plaintiff's political beliefs were nonactionable because they "characterize[d] disclosed facts"); Remick v. Manfredy, 238 F.3d 248, 261 (3d Cir. 2001) (same for statements about the quality of plaintiff attorney's representation); Redco Corp., 758 F.2d at 972 (same for statements about the risks of plaintiff's tire rims); cf. Read v.

Such is the case here.  First, <u>Anesthesiology</u> is a leading journal in the field and is offered as a free benefit to the ASA's members, who are "physicians practicing in anesthesiology as well as anesthesiologist assistants and scientists interested in anesthesiology."  JA34.  Second, the readers were provided with the data and methodology on which the statements were based.  The Hussain Article stated that it was based on nine randomized studies, gave the reasons for selecting those studies, and disclosed the possible shortcomings of its methodology.  The Ilfeld Review disclosed the seventy-six randomized controlled trials involving EXPAREL it reviewed, what those trials concluded, and the methods the authors used to analyze the data.  The CME's statement that EXPAREL is "inferior" to local anesthetics is based directly on the Ilfeld Review's finding that "[n]inety-two percent of trials (11 of 12) suggested [standard local anesthesia] provides superior analgesia to [EXPAREL]."  JA96.  Similarly, the CME's statement allegedly suggesting that industry-sponsored studies favoring EXPAREL were biased is drawn directly from the Articles, which state that industry-sponsored studies were "considered a potential source of bias."  JA78; <u>see also</u> JA145 ("Explicitly excluded from the Cochrane bias tool is industry funding.").[19]  Therefore, the journal's readers were provided

<u>Profeta</u>, 397 F. Supp. 3d 597, 653 (D.N.J. 2019) (dismissing trade libel claim under New Jersey law where disputed statement was a "conclusion or an opinion-based characterization of the facts").

[19] Pacira asserts that the McCann Editorial and Podcast "repeat the false conclusions of the Hussain Article and Ilfeld Review."  Appellant's Br. at 52.  Applying the content, verifiability, and context considerations to those pieces leads us to conclude that they are also nonactionable opinions.

the basis for the statements, have the expertise to assess their merits based on the disclosed data and methodology, and thus are equipped to evaluate the opinions the authors reached.[20]

For these reasons, content, verifiability, and context all support the conclusion that the statements are nonactionable opinions.  The District Court, therefore, properly dismissed Pacira's complaint.[21]

## II

The District Court also correctly denied Pacira's request for leave to file an amended complaint.  See Krantz v. Prudential Invs. Fund Mgmt., 305 F.3d 140, 144 (3d Cir. 2002) (per curiam).  Under Federal Rule of Civil Procedure 15(a), amendment "must be permitted . . . unless it would be inequitable or futile."  Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).  The sole basis for Pacira's trade libel claim is the statements in the Articles, CME, and Podcast.  As discussed above, the statements constitute nonactionable

---

Moreover, the McCann Editorial allegedly "criticize[s]" EXPAREL and its cost, JA58, but even "pejorative statements of opinion are entitled to constitutional protection no matter how extreme, vituperous, or vigorously expressed they may be," Kotlikoff, 444 A.2d at 1091.

[20] To the extent that ONY embraced a categorical rule that scientific statements contained in academic journals are always immune from a trade libel claim, we decline to hold that New Jersey law mandates such a rule.

[21] As a result, we need not determine whether any of the Defendants are immune from suit or outside the District Court's personal jurisdiction.

opinions as a matter of law, and no new factual allegations, including criticisms about the bases for these opinions, would disturb that conclusion.  Therefore, the District Court did not abuse its discretion in finding that amendment would be futile.

## III

For the foregoing reasons, we will affirm.